```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

|                              |   |                    |
|------------------------------|---|--------------------|
| UNITED STATES OF AMERICA,    | : | NO. 1:06-CR-00111  |
|                              | : |                    |
| v.                           | : | **OPINION AND ORDER** |
|                              | : |                    |
| STEVEN WARSHAK, et al.       | : |                    |

This matter is before the Court on Defendants Steven Warshak, Berkeley Premium Nutraceuticals, Inc., ("BPN"), TCI Media, Inc., ("TCI"), Harriet Warshak, and Steven Pugh's Motion for a New Trial (doc. 734), the government's Response in Opposition (doc. 746), and Defendants' Reply (doc. 748). For the reasons indicated herein, the Court DENIES Defendants' Motion.

**I. Background**

On February 22, 2008, the jury returned guilty verdicts as to four of the individual and two of the corporate Defendants in this case, thereby finding the government had proven beyond a reasonable doubt Defendants' involvement in making false representations to consumers, numerous fraudulent "autoship" charges to consumer credit cards for products the consumers did not order, money laundering, schemes to conceal transaction abnormalities from banks, and the obstruction of two federal agency proceedings (docs. 373, 375, 377, 381, 383, 385). In the instant motion, three of the individual and two of the corporate Defendants

move for a new trial, pursuant to Fed. R. Crim. P. 33, based on the theory that they have uncovered new exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963) (doc. 734). The government argues that Defendants' motion should be denied, as the evidence in question is not newly discovered evidence, and it does not constitute Brady material (doc. 746). The government further argues BPN is unauthorized to file the motion, as it is a Chapter 11 debtor in U.S. Bankruptcy Court, and there is apparently no authorization by its court-appointed Trustee to do so (Id.). Defendants reply that in their view BPN is within its rights to be party to the motion, and that their Rule 33 motion was appropriate, and if denied, provides them with the fullest range of preserved appellate issues (doc. 448).

**II. Legal Standards**

A motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence. Generally, such motions are granted only "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." United States v. Turner, 490 F. Supp. 583, 593 (E.D. Mich. 1979), aff'd, 633 F.2d 219 (6th Cir. 1980). A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the

evidence.  United States v. Lutz, 154 F.3d 581, 589 (6th Cir. 1998).  However, motions for a new trial based on newly discovered evidence "are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent a 'clear abuse of discretion.'" United States v. Hawkins, 969 F.2d 169, 175 (6th Cir. 1992)(quoting United States v. O'Dell, 805 F.2d 637, 640 (6th Cir. 1986).  A court may grant a new trial based on newly discovered evidence where Defendant shows 1) the new evidence was discovered after trial, 2) the evidence could not have been discovered earlier with due diligence, 3) the evidence is material and not merely cumulative or impeaching, and 4) the evidence would likely produce an acquittal.  Id.

In Defendants' motion, they argue the evidence they claim is newly discovered also constitutes evidence that should have been turned over to the defense by the government under Brady v. Maryland, 373 U.S. 83, 87 (1963).  Under Brady, the prosecution must disclose all material, exculpatory and impeachment evidence to a defendant, and its failure to do so can provide the basis for a new trial.  United States v. Bagley, 473 U.S. 667, 676 (1985). The Sixth Circuit explained in United States v. Bencs that "[m]ateriality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." 28 F.3d 555, 560 (6th Cir. 1994) (citing United States v. Agurs, 427 U.S. 97, 112 n.20,(1976)). Evidence is material under Brady if a reasonable

3

probability exists that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S. at 682. A reasonable probability is one that sufficiently undermines confidence in the outcome of the trial. Id. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). When determining whether the withheld information was material and therefore prejudicial, the Court considers it in light of the evidence available for trial that supports the petitioner's conviction. Towns v. Smith, 395 F.3d 251, 260 (6th Cir. 2005); Clinkscale v. Carter, 375 F.3d 430, 445 (6th Cir. 2004).

**III. Defendants' Motion and the Government's Response**

Defendants premise their motion on four categories of evidence, 1) post-trial deposition testimony by Greg Cossman, 2) post-trial deposition testimony by Sue Cossman, 3) Federal Trade Commission documents, and 4) VISA materials (doc. 734). Should the Court refuse to grant a new trial, Defendants request in the alternative that the Court order the government to provide 1) witness interview documents, 2) information generated by witness interviews that is exculpatory, even if the exculpatory communications were not memorialized in report or note, and 3) all

4

materials provided to the government by VISA (Id.). In addition, Defendants ask the Court to order the government to inspect the entirety of the Federal Trade Commission investigation file and to provide Defendants with all documents in such file that are exculpatory (Id.). The Court will address each category of evidence, and the parties' arguments as to each category, seriatum.

### A. Post-Trial Testimony by Greg Cossman

In connection with the civil enforcement action brought by the Federal Trade Commission, No. 1:06-CV-00051, Defendant Steven Warshak deposed Greg Cossman, who had testified on behalf of the government in the trial of this matter. In his deposition, Greg Cossman essentially testified that he had never intended to commit any crimes, that the government had an agenda in rejecting positive information about the workings of BPN, and that Defendants' manipulation of charge-back ratios did not result in losses to consumers or banks (doc. 734). Defendants concede that some of the exculpatory information provided on deposition from Greg Cossman was disclosed to the jury through cross-examination, but appear to argue that not all of it was disclosed, and that this militates toward the grant of a new trial (Id.).

The government responds that Greg Cossman's deposition testimony is merely cumulative to his trial testimony on cross-examination that he did not think he was committing crimes while working at BPN (doc. 746). The jury properly rejected such an

5

explanation of Greg Cossman's ignorance, contends the government, in light of his trial testimony that he cooperated with Steven Warshak and others to defraud customers, to make unauthorized charges to consumer credit cards for continuity shipments with no or only erratic disclosure, to inflate transactions to manipulate the charge-back ratio, and to falsely represent Harriet Warshak as the owner of the company so as to open accounts for credit card processing (Id.). Nothing in such testimony, argues the government, indicates Greg Cossman acted by mistake or unknowingly (Id.). Moreover, argues the government, Greg Cossman testified at trial that when he saw the charges brought against him, he saw no other choice than to plead guilty and own up to his responsibility (Id.). In the light of the fact that the evidence of Defendants' guilt included testimony from five other conspirators, two dozen consumer victims, and emails in Steven Warshak's own words, the government contends Cossman's deposition testimony is at most merely impeaching of Cossman's detailed description of the criminal conduct in which he and the other Defendants were involved (Id.). Nor can such testimony qualify as Brady evidence, argues the government, as Greg Cossman testified as to his claim of ignorance of the law at trial, and the jury's verdict evidenced their rejection of such a claim (Id.).

Having reviewed this matter, the Court finds the government's position well taken. Greg Cossman's post-trial

deposition testimony does not constitute either newly discovered evidence, or <u>Brady</u> material. The Court is persuaded that such deposition testimony is merely cumulative of testimony elicited from Mr. Cossman on cross-examination at trial. The jury's verdicts were supported by adequate evidence and as such, are worthy of confidence. <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995).

### B. Post-trial Testimony by Sue Cossman

Defendant Steven Warshak similarly conducted a post-trial deposition of his sister, Sue Cossman, in which she testified that she never felt she had been doing anything illegal while working at BPN, that her previous statement that she directed customer care employees not to issue credits or refunds was untrue, and that the FBI agents were not interested in anything positive she had to say about Berkeley products (doc. 734). Defendants argue they were deprived of the opportunity to present this evidence, which they consider exculpatory, to the jury, and there is a reasonable probability that such evidence would have produced a different verdict (<u>Id</u>.).

The government replies that Defendants made a deliberate decision not to call Sue Cossman as a witness at trial, and under <u>United States v. Turns</u>, 198 F.3d 584, 588 (6th Cir. 2000), such decision not to call a known witness should not be rewarded with a new trial (doc. 746). Defendants, the government contends, fail to show Sue Cossman's testimony was discovered only after trial and

7

that it could not have been discovered earlier with due diligence (Id.). Moreover, argues the government, there were no "exculpatory witness debriefings" and no "nondisclosure of exculpatory evidence," such that Defendants fail to make any showing of undisclosed Brady material (Id.).

The Court finds the government's position well-taken, and concludes Defendants' failure to call Sue Cossman as a witness is fatal to their instant arguments. Turns, 198 F.3d 584, 588. The Court further finds no showing by Defendants that the government failed to disclose exculpatory material. The Court is leery of post-trial recanting of prior statements, particularly by a Defendant that received a light sentence, and who very rationally would like to assist her brother, who is facing a heavier penalty.

**C. FTC Documents**

Defendants claim to have unearthed FTC documents in connection to the civil litigation, that show the FTC conducted an undercover investigation with relation to BPN in March 2004 (doc. 734). Defendants state that in the context of the undercover investigation, BPN disclosed its continuity program to the agent posing as a consumer, provided a credit for a returned product, and did not place any unauthorized transactions on the credit card provided by the investigator (Id.). Defendants argue that this investigation, as well as FTC printouts of BPN website pages showing disclosures, constitutes exculpatory evidence that the

8

government should have disclosed prior to trial (Id.).

Defendants further claim the FTC obtained a voluminous production of exculpatory email evidence from Garden State Nutritionals, the company that manufactured Berkeley's products (Id.). The emails range from August 2003 to March 2004, are primarily authored by Defendant Steve Warshak, and involve discussions regarding product formulas, product claims, and substantiation of claims (Id.). Defendants argue the FTC's production show that it obtained information outside the scope of its civil investigative demand, which demonstrates it was actually part of the prosecution team (Id.).

The government responds that under United States v. Merlino, 349 F.3d 144, 154 (3rd Cir. 2003), there is no Brady duty regarding information possessed by government agencies not involved in prosecution (doc. 746). Here, contends the government, the FTC investigation was not used to acquire evidence for the criminal case, nor did criminal investigators direct or participate in the FTC investigation (Id.). The FTC's investigation, argues the government, was conducted pursuant to its regulatory authority, and was wholly independent from the criminal investigation (Id.). Accordingly, the government argues, it had no duty to disclose transcripts of undercover phone calls or printouts of BPN website pages (Id.). The government further contends that the FTC's evidence is merely cumulative to that presented to the jury at

9

trial, as the jury saw evidence that disclosures were misleading and were made inconsistently (Id.). As for the Garden State Nutritional documents, the government contends such materials are completely irrelevant to the mail, wire, and bank fraud schemes the jury determined took place, as the emails primarily discuss product ingredients and formulas (Id.). The FTC's investigation expanded over time, argues the government, and this in no way shows it was a part of the criminal prosecution team (Id.).

The Court already concluded in its December 13, 2007 Order that

> the FTC. . .acted in conformity with [its] regulatory authority. The Court sees no evidence that [its] actions were controlled by criminal investigators, or even that any of the civil agencies knew of the criminal investigation.

(doc. 247). The evidence currently proffered by Defendants in no way shows the civil investigations were controlled or used by the prosecution, and in no way affect the Court's earlier conclusions. The fact that an FTC undercover agent found that BPN made proper disclosures during the agent's interactions while posing as a consumer in no way contradicts the evidence at trial that disclosures were inconsistent. Sometimes BPN made them, and sometimes it did not. The evidence at trial showed that the BPN's business practices shifted regularly. None of the emails currently proffered by Defendants are relevant to the issue of consumer disclosures, bank fraud, wire, or mail fraud. The Court finds no

basis for a new trial under Rule 33, nor any Brady obligation. Merlino, 349 F.3d 144, 154 (3rd Cir. 2003).

### D. The VISA Materials

Defendants argue that VISA fraud officer Hector Rodriguez erroneously testified at trial that BPN was one of less than thirty companies out of 6.5 million companies, that made it into the third month of VISA's chargeback monitoring program (doc. 734). Defendants argue that documents provided to them mid-trial show that VISA mistakenly placed BPN into the third month of its monitoring program, skipping any notification period and or months one or two (Id.). Defendants argue the government, to the extent that it knew such information, should have disclosed it, and that such evidence undermines confidence in the jury's verdict (Id.).

The government responds that the VISA information was available to Defendants at the time of trial, and they could have used it at that time (doc. 746). Citing Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000), the government states no Brady claim exists where the information at issue was in Defendants' possession, or otherwise available to them (Id.). Moreover, contends the government, such evidence cannot constitute "newly discovered" evidence simply because on closer review a new legal theory comes to light (Id. citing United States v. Olender, 338 F.3d 629, 635-36 (6th Cir. 2003)).

The Court finds the government's position well-taken.

Even should the testimony of Mr. Rodriguez have been impeached by Defendants' now untimely theory, the record contained plenty of testimony as to Defendants' efforts to manipulate the chargeback ratios so as to allow them to continue charging consumer credit cards without authorization. The Court finds no basis for a new trial based on Defendants' proffer of the VISA materials.

**IV. Defendants' Reply**

Defendants devoted their Reply to two issues the government raised in its Response: 1) the propriety of BPN filing the motion, without apparently gaining authorization from the bankruptcy trustee, and 2) the propriety of the payment of legal fees (docs. 741, 748). Defendants argue BPN was within its rights to file the motion so as to protect its right on appeal (doc. 748). Defendants further argue no legal fees have been paid to counsel "in the last several months," as counsel have adhered to the Court's directive that no further legal fees be paid.

The parties' arguments concerning the propriety of BPN filing the instant motion are mooted by the Court's rejection of the motion. However, the Court finds well-taken the Defendants' arguments that BPN, although divested of its assets, still can preserve its rights on appeal, as it has done. Finally, the Court will accept in good faith Defendants' representation that no further legal fees have been paid, consistent with the Court's directive. Any improperly disbursed funds, clearly, would be

12

subject to the Bankruptcy Court's jurisdiction and review.

**V. Conclusion**

For the reasons indicated herein, the Court DENIES the Motion for a New Trial by Defendants Steven Warshak, Berkeley Premium Nutraceuticals, Inc., ("BPN"), TCI Media, Inc., ("TCI"), Harriet Warshak, and Steven Pugh (doc. 734).


SO ORDERED.

Dated: February 3, 2009        /s/ S. Arthur Spiegel
                               _____
                               S. Arthur Spiegel
                               United States Senior District Judge